IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

NORRIS SCOTT,

        Plaintiff,

v.                                                                              Case No. 23-2003-JWB

HAMM, INC., d/b/a HAMM COMPANIES,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's partial motion to dismiss. (Doc. 5.) The motion has been fully briefed and is ripe for decision. (Docs. 6, 10, 13.) Defendant's motion is GRANTED IN PART and DENIED IN PART for the reasons stated herein.

**I.  Facts**

The following facts are taken from Plaintiff's complaint. Plaintiff Norris Scott is an African American male who was first employed by Defendant HAMM, Inc., in September 2021 as a heavy equipment operator. During his employment, Plaintiff was the only person of color in his assigned work group. Plaintiff was treated negatively and disrespectfully on a daily basis. He was subjected to racial and discriminatory comments and jokes. Plaintiff was called "bubba," "boy," and other names. On his third day of employment, Plaintiff's trainer, Mr. Rogers, who is white, called him "bubba." Plaintiff corrected him and asked to be called by his first or last name. Mr. Rogers insisted on calling Plaintiff "bubba" despite Plaintiff's protests. On one occasion, Mr. Rogers told Plaintiff that he had dealt with many "blacks" in his prior position and referred to African Americans as "animals." (Doc. 1-1 at 9.) Mr. Rogers also told Plaintiff that one of his brothers was a high-ranking member of a white supremacist group.

During Plaintiff's second week of employment, Mr. Randy, the loader-operator at the quarry, cursed at Plaintiff for no reason and made threatening gestures towards Plaintiff. Plaintiff remained calm and continued doing his job. On one occasion, while loading Plaintiff's truck, Mr. Randy intentionally lowered the bucket fast so that it hit Plaintiff's truck bed violently, startling Plaintiff, which resulted in Mr. Randy and others laughing and mocking Plaintiff. On another occasion, Mr. Randy got out of his truck, yelling at Plaintiff that Plaintiff could not "drive for shit....your work is shit boy! Do what the fuck I tell you boy." (*Id.* at 11.) Plaintiff reported these incidents to management but was told: "Don't worry. Just do exactly as [Mr. Randy] says, and things will work out 'bubba.'" (*Id.*) The harassment and insults continued in the following weeks and days.

Plaintiff alleges that he was intentionally excluded by management and supervisors when there were meetings to discuss, diagnose, and solve any problems, even though those meetings were attended by white co-workers who were hired at the same time as Plaintiff. When Plaintiff asked to be included, he was told by Mr. Licks to just "grab a shovel and go clean the catwalk." (*Id.* at 12.) On another morning, Plaintiff complimented Mr. Licks' new haircut. In response, Mr. Licks stated, "thank you, I just joined the skin-heads' party." (*Id.*) On another occasion when production stopped and Plaintiff asked to be involved in the discussion, Plaintiff was again instructed to "shovel the catwalk" instead of being involved in solving the production issue. (*Id.*)

Plaintiff reached out to the plant manager, Mr. Waddell, and specifically complained about the discriminatory racial treatment. Plaintiff told Mr. Waddell about all the statements, name calling, derogatory jokes and epithets he had been subjected to in the few weeks of his employment. (*Id.* at 13.) With respect to Mr. Randy, Mr. Waddell told Plaintiff that fifteen or twenty people had complained about Mr. Randy and that he was just an "asshole to everyone."

(*Id.*) Plaintiff's complaints were ignored and no one was disciplined or reprimanded. The harassing and uttering of racial and discriminatory statements continued. Plaintiff again complained to management and was told to "just deal with it." (*Id.* at 14.) After two and a half months of employment, Plaintiff was informed by Mr. Waddell that he was terminated. The reason given was that Plaintiff was "not happy here....the mining industry is not for everyone. Some people just don't fit in." (*Id.*) Defendant never took any corrective action regarding Plaintiff's complaints.

On February 14, 2022, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission. (Doc. 1-1 at 24–27.) Plaintiff received his right to sue letter from the EEOC on September 9, 2022. Plaintiff filed this action in the District Court of Johnson County, Kansas, on December 2, 2022, and it was removed to this court on January 3, 2023. (Doc. 1.) Plaintiff's complaint alleges the following claims against Defendant HAMM: 1) race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e; 2) color discrimination in violation of Title VII; 3) retaliation in violation of Title VII; 4) hostile work environment; 5) retaliatory discharge in violation of Kansas law; and 6) race discrimination under 42 U.S.C. § 1981. Defendant moves for dismissal of all but Plaintiff's Title VII retaliation claim.

**II.     Standard**

In order to withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278,

1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

**III.   Analysis**

    **A.  Title VII Discrimination and § 1981 Claim**

Plaintiff has alleged that Defendant discriminated against him in violation of Title VII and § 1981. Regardless of whether Plaintiffs claims are brought pursuant to Title VII or § 1981, "the elements of a discrimination lawsuit are the same." *Gerovic v. City & Cnty. of Denver*, No. 22-1148, 2023 WL 2293518, at *7 (10th Cir. Mar. 1, 2023) (quoting *Fulcher v. City of Wichita*, 387 F. App'x 861, 864 (10th Cir. 2010)). Therefore, the court will address the sufficiency of these claims together.

To state a claim of race or color discrimination, Plaintiff must establish that (1) he belongs to a protected class; (2) he suffered an adverse employment action; and (3) the challenged action took place under circumstances giving rise to an inference of discrimination. *See EEOC v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007). With respect to causation, Title VII requires Plaintiff to show that his race or color was "a motivating factor in the defendant's challenged employment decision." *Comcast Corp. v. Nat'l Assoc. of African American-Owned Media*, 140 S. Ct. 1009, 1017 (2020). Under Section 1981, Plaintiff must demonstrate that "race was a but-for cause of [his] injury." *Id.* at 1014.

"A complaint raising a claim of discrimination does not need to conclusively establish a prima facie case of discrimination, but it must contain more than [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Bekkem v. Wilkie*, 915 F.3d 1258, 1274 (10th Cir. 2019) (internal quotations omitted). The Tenth Circuit does not "mandate the pleading of any specific facts in particular, [but] a plaintiff must include enough

context and detail to link the allegedly adverse employment action to a discriminatory or retaliatory motive with something besides sheer speculation." *Id.* at 1274–75 (internal quotations omitted).

Here, Defendant argues that Plaintiff cannot show that his termination gives rise to an inference of discrimination because Mr. Waddell did not engage in discriminatory behavior similar to the conduct alleged to have been done by Mr. Rogers, Mr. Randy, or Mr. Licks.[1]  (Doc. 6 at 15.) Defendant further argues that Plaintiff has not connected the discriminatory comments to his termination.  In reviewing the allegations, the court must determine whether Plaintiff has sufficiently alleged facts that support a finding that Plaintiff's termination occurred under circumstances giving rise to an inference of discrimination.

Plaintiff's complaint discusses numerous instances of discriminatory conduct by several individuals.  It also alleges that Mr. Waddell knew about these incidents and even heard them occur over a walkie talkie. (Doc. 1-1 at 14.)  When Plaintiff complained on numerous occasions, Mr. Waddell and management told Plaintiff to get over it and be thankful that he had a job.  In addition to being verbally harassed, Plaintiff was treated differently than his white co-workers in his job duties.  After repeatedly complaining about this treatment to Mr. Waddell, Mr. Waddell fired him, telling him he didn't fit in with the rest of the employees.  The court finds that Plaintiff's complaint sufficiently states facts from which one can reasonably infer that Defendant's decision to terminate Plaintiff's employment was motivated by racial animus and the decision would not have occurred but for his race and/or color.  *See Kerr v. Unified Gov't of Wyandotte Cnty. / Kansas City, Kansas*, No. 21-2335-JWL, 2021 WL 4806391, at *2 (D. Kan. Oct. 14, 2021) (finding that allegations of offensive comments and harm as a result of discrimination were sufficient to

---

[1] In response, Plaintiff alleges that he suffered additional adverse actions. (Doc. 10 at 6–7.) The court need not address those additional allegations and whether they sufficiently qualify as adverse actions, however, because it finds that Plaintiff has sufficiently stated a claim based on his termination.

plausibly allege but-for causation under § 1981) (citing *Bostock v. Clayton County, Ga.*, 140 S. Ct. 1731, 1739-40 (2020) (but-for and motivating factor causation standards provide alternative bases for liability under Title VII)).

Defendant's motion to dismiss these claims is denied.[2]

### B.  Hostile Work Environment

Next, Defendant moves to dismiss Plaintiff's claim of hostile work environment on the basis that Plaintiff has not sufficiently stated a claim.  A hostile work environment claim is "composed of a series of separate acts that collectively constitute one unlawful employment practice."  *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1251 (10th Cir. 2021).  Plaintiff can establish his claim of a hostile work environment based on unlawful race or color discrimination by showing (1) he was harassed because of his race or color, and (2) that the harassment was sufficiently severe or pervasive such that it altered the terms or conditions of his employment.  *Id. See also Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005).  "An employer can be held liable if its employees create a hostile work environment and it knew or should have known about the conduct but failed to stop it."  *Id.* (internal quotation and citation omitted).

Viewing Plaintiff's allegations in their totality, the court finds that Plaintiff alleges conduct that can support a plausible finding or inference of pervasive harassment based on color or race. Defendant essentially tries to isolate Plaintiff's allegations and argue that the racial comments are

---

[2] Defendant argues that Plaintiff failed to state a discrimination claim under § 1981 because he alleged that race and color were "motivating" factors in his termination and did not allege "but-for" causation.  (Doc. 6 at 23.)  In his allegations, Plaintiff asserts that he was subjected to "race" discrimination "in violation of Section 1981." (Doc. 1-1 ¶ 116.)  Plaintiff further alleges that Defendant engaged in discrimination "because of his race" (*id.* at 22) and that he was terminated as a result.  These allegations, along with the additional allegations discussed in this order, are sufficient to plausibly allege but-for causation.  *See Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 350 (2013) (discussing that the term "because of" means it was the reason for the action, or the "but-for" cause); *see also Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1739 (2020) (discussing that "a but-for test directs us to change one thing at a time and see if the outcome changes. If it does, we have found a but-for cause....Often, events have multiple but-for causes.")

insufficient to state a claim and the remaining incidents regarding differential treatment do not constitute actionable harassment. Contrary to Defendant's position, Plaintiff's complaint alleges more than just isolated racial comments. Rather, Plaintiff was called "boy" and "bubba" on multiple occasions and, on one occasion, an individual in management called him "bubba" after he complained about discrimination.[3] Mr. Rogers referred to African Americans as "animals." Plaintiff was repeatedly told to deal with the racial discrimination which grew increasingly hostile and, on one occasion, was told that he was "overreacting." (Doc. 1-1 at 26.) He was treated differently at work on several occasions, including being told to go and clean the catwalk instead of being involved in troubleshooting with his white co-workers, and was subjected to physically threatening conduct (slamming the truck bed and loading his truck in an unbalanced way). (*See id.* at 25–26) (identifying the catwalk allegations and additional allegations of disparate treatment). The Tenth Circuit authorities[4] Defendant cites (Doc. 6 at 18–19) in support of its position are not persuasive as the decisions involved few, sporadic, or isolated incidents, and two of the decisions cited were rulings on summary judgment. *See Chung v. El Paso Cnty./Colorado Springs Sch. Dist. #11*, 115 F. Supp. 3d 1242, 1256 (D. Colo. 2015), *aff'd sub nom. Chung v. El Paso Sch. Dist. #11*, 659 F. App'x 953 (10th Cir. 2016) (granting summary judgment based on a lack of "any racist comments" and noting that "silent treatment, disapproving or condescending looks, and other

---

[3] Although Defendant argues that Plaintiff's allegations regarding being called "bubba" and "boy" are not sufficient to state a claim, Defendant does not challenge Plaintiff's allegations that they were demeaning and/or racial epithets. (Doc. 6.) With respect to "bubba," Plaintiff clearly requested that he be called by his name and this was ignored. The term "boy" has been "used to demean African–American men throughout American history." *See Faragalla v. Douglas Cnty. Sch. Dist. RE* 1, 411 F. App'x 140, 153 (10th Cir. 2011). Moreover, Defendant's contention that Plaintiff only identified two examples of being called "bubba" or "boy" in his complaint is inaccurate. (*Id.* at 17.) Plaintiff alleged that Mr. Rogers called him bubba multiple times despite Plaintiff correcting him. Plaintiff further alleged that Mr. Randy called him boy twice while yelling and cussing at him and, according to his EEOC complaint, Plaintiff was called boy over the radio by two other co-workers. (Doc. 1-1 at 26.)

[4] Defendant also cites to out of circuit authority in support of its position but the court finds it unpersuasive and declines to specifically address that authority. Moreover, there are numerous decisions in this circuit involving hostile work environment claims and the court sees no need to look outside of this circuit for authority.

forms of passive action do not, as a matter of law, constitute materially adverse actions" to support a finding that the harassment was severe or pervasive.); *Morris v. City of Colorado Springs*, 666 F.3d 654, 665 (10th Cir. 2012) (granting summary judgment on the basis that the plaintiff failed to show that the harassment was severe or pervasive when the evidence indicated that the plaintiff was flicked on the head twice, an object was thrown at her, and a male employee yelled at her during unknown circumstances); *Yang v. Lakewood Mgmt. L.L.C.*, 918 F. Supp. 2d 1205, 1206 (D. Kan. 2013) (granting the defendant's motion to dismiss based on the holding in *Morris*, *supra*, when the plaintiff alleged three minor incidents of physical injury (a co-worker put peanut butter on his head, a paper wad was thrown at the plaintiff, and some pepper sauce was put on his head).

In this case, Plaintiff doesn't rely on isolated racial comments. Rather, his complaint includes multiple instances of racial comments directed at Plaintiff. Therefore, Defendant's argument that Plaintiff's complaint does not sufficiently allege that the harassment was because of race or color is not persuasive. Plaintiff's complaint also includes allegations of differential treatment and increasing hostility over a short two and a half month period and allegations that management ignored his complaints. *See Lounds v. Lincare, Inc.*, 812 F.3d 1208, 1224 (10th Cir. 2015) ("We have long held that facially neutral abusive conduct can support a finding of racial animus sufficient to sustain a hostile work environment claim when that conduct is viewed in the context of other, overtly racially-discriminatory conduct.")

Under the authority in this court, Plaintiff has alleged a plausible hostile work environment claim. *See, e.g., Iweha v. Kansas*, No. 21-1228-DDC-RES, 2022 WL 1684697, at *5–6 (D. Kan. May 26, 2022) (denying motion to dismiss after review of the plaintiff's allegations of co-workers' inappropriate questions regarding her native country, repeated derogatory comments about Nigerian women, denying a request for a flexible schedule, and her supervisor's "indifference to

8

plaintiff's complaints of unequal treatment and racially hostile work conditions.") (citing *Clay v. United Parcel Serv., Inc.*, 983 F. Supp. 2d 1331, 1342 (D. Kan. 2013) (finding plaintiff sufficiently alleged claim where plaintiff overheard racial slurs on radio, defendant ignored plaintiff's complaint about co-worker's confederate flag license plate, and co-worker told plaintiff a joke with racially offensive terms); *Zhu v. Fed. Hous. Fin. Bd.*, 389 F. Supp. 2d 1253, 1287 (D. Kan. 2005) (finding plaintiff plausibly alleged hostile work environment based on her national origin even though she alleged "only two derogatory references to her national origin").

Defendant's motion to dismiss Plaintiff's hostile work environment claim is denied.

### C. State Law Retaliatory Discharge

Finally, Defendant moves to dismiss Plaintiff's state law retaliatory discharge claim. Generally, employment is at-will in Kansas and employers may terminate an employee for any reason. *Hill v. State*, 310 Kan. 490, 500, 448 P.3d 457 (2019). There are exceptions, however, including those that violate public policy. *Id.* at 500–01. A plaintiff, however, may not proceed under a common law retaliatory discharge claim if that plaintiff has an adequate statutory remedy. *Ray v. Core Carrier Corp.*, No. 20-CV-02448-JAR-TJJ, 2021 WL 365092, at *3 (D. Kan. Feb. 3, 2021) (citing *Conner v. Schnuck Mkts., Inc.*, 906 F. Supp. 606, 615 (D. Kan. 1995) and *Polson v. Davis*, 895 F.2d 705, 709–10 (10th Cir. 1990)). "Thus, under the adequate alternative remedy doctrine, if an adequate federal or state remedy is available, the public policy claim under Kansas common law is precluded." *Id.*

In Plaintiff's complaint, Plaintiff alleges that he was terminated in violation of Kansas public policy for complaining about discrimination and reporting incidents of workplace safety issues. Defendant argues for dismissal because Plaintiff has an adequate statutory remedy for his retaliation claim under Title VII and further argues that Plaintiff has failed to sufficiently alleged

that he reported incidents regarding workplace safety. (Doc. 6 at 15–16.) In response, Plaintiff merely asserts that he reported discriminatory treatment and fails to address Defendant's argument that this is insufficient to state a common law claim in light of adequate statutory remedies. (Doc. 10 at 11–12.) Therefore, the court finds that Plaintiff's state law claim is subject to dismissal.

**IV.    Conclusion**

Defendant's motion to dismiss (Doc. 5) is GRANTED IN PART and DENIED IN PART. Plaintiff's state law claim of retaliatory discharge is dismissed. Plaintiff has sufficiently stated a plausible claim as to the remaining causes of action.

IT IS SO ORDERED. Dated this 14th day of March, 2023.

                                                                  __s/ John W. Broomes_____
                                                                   JOHN W. BROOMES
                                                                   UNITED STATES DISTRICT JUDGE